38867, 38868. DENNARD v. FREEPORT MINERALS
COMPANY et al.; and vice versa.

GREGORY, Justice.

This case involves the construction of the terms of a lease of mineral rights to kaolin clay on appellant's property in Wilkinson County.

The Middle Georgia area is the major source of kaolin production in the United States. Over 90 percent of all kaolin clay produced in the United States is from Georgia, and about 50 percent of the world's production comes from this state. According to the expert testimony in this case, the most profitable uses of kaolin are in the paper industry, as paper coating and fillers. While only the higher grades of kaolin are used for those purposes, they account for over two-thirds of kaolin use. The other one-third use of the kaolin production is split among some 20 other type products.

The lease in this case was entered in September 1941 between Mrs. Dennard's predecessor in interest (her husband, Mr. Dennard) and Freeport Minerals Company's predecessor in interest (P. W.

Martin Gordon Clays, Inc.). The lease extended for a twenty-year term with an option to renew the lease for an additional nineteen years (which option was exercised). Under the terms of this agreement, Dennard agreed to lease 150 acres of his farm "with the right to search for, mine and remove such kaolin and bauxite, as tenant deems to be commercially profitable, at any time and from time to time during the continuance of this contract in force . . ." For these lease rights, Freeport's predecessor agreed to pay a rental of $300 annually as well as royalties in the sum of "12 1/2 cents for each ton of 2240 pounds of refined clay and bauxite (railroad weight) removed from said land by tenant . . ."

Appellant's leased land was not mined from September 1941 until July 26, 1979, when Freeport notified Mrs. Dennard of its intention to begin mining operations on her property pursuant to the terms of their mining lease agreement (the terms of the lease would expire in September 1980). During the interim 38-year period, appellee and its predecessors had paid the annual rent specified in the lease agreement to appellant and her predecessor.

Prior to the commencement of mining operations, Mrs. Dennard gave Freeport notice that she would accept nothing less than strict compliance with the terms of the lease. Freeport informed her that they intended to pay her the 12 1/2 cents per ton royalty on each ton of crude ore actually removed from her property rather than on the basis of each ton of kaolin or bauxite actually refined from that crude. Freeport contended that this method of calculation would be more accurate and would materially benefit Mrs. Dennard by insuring that she received even greater royalty benefits than the contract required Freeport to pay.

Freeport then mined and removed kaolin from Dennard's property. Freeport weighed the crude ore it removed and paid into court an amount equal to 12 1/2 cents per ton of crude ore actually removed. Mrs. Dennard brought suit seeking injunctive relief and damages, arguing that Freeport's plan for mining and processing kaolin violated express and implied obligations in the 1941 lease.

The lease period has expired and all mining operations have ceased. The crude ore removed has been "stockpiled" by appellee. Freeport wants to blend this crude kaolin with kaolin from other deposits prior to refining and to pay Dennard royalties on the basis of crude tonnage.

Following extensive pleadings, discovery and testimony, the trial court heard and denied Mrs. Dennard's Motion for Partial Summary Judgment, reaching the following conclusions of law:

"(a) The Defendant, Freeport, has not breached its contractual obligation to Plaintiff by failing to weigh, compute and pay royalties

in strict accordance with the terms of the lease because the method substituted by Freeport for calculating royalties will result in Plaintiff receiving royalties equal to or greater than that to which she would be entitled under the strict terms of the lease.

"(b) The Defendant, Freeport, has not breached its contractual obligation to Plaintiff by utilizing subjective standards to determine 'commercial profitability' because it is entitled to make the determination as to commercial profitability on a subjective basis in light of its own production requirements and specifications and, in doing so, it has acted in good faith."

The trial court further ordered that the crude ore removed from Mrs. Dennard's land remain in "stockpile," uncommingled, until further order of the court.

Mrs. Dennard appeals from the denial of her Motion for Partial Summary Judgment, arguing that the trial judge's Conclusions of Law are erroneous.[1] Freeport cross-appeals from the denial of their Motions to Dismiss Mrs. Dennard's complaint, arguing improper venue and lack of personal jurisdiction.

For reasons which appear below, we affirm the trial judge's denial of the Motion for Partial Summary Judgment and denial of the Motion to Dismiss.

1. Under the terms of this lease, Freeport's predecessor agreed to pay Dennard royalties of "12 1/2 cents for each ton of 2240 pounds of refined clay . . . removed from said land by tenant . . ." Freeport, however, wants to pay Dennard 12 1/2 cents for each ton of crude ore removed from the land so that Freeport can then "commingle" the Dennard ore with crude from other deposits and thereby refine it more efficiently. Appellant argues that the failure of appellee to strictly comply with this provision would be a material breach of the lease agreement. We disagree.

Our general rule with respect to compliance with contract terms is not strict compliance, but substantial compliance. Code Ann. § 20-1101; *Henderson Warehouse Co. v. Brand,* 105 Ga. 217 (31 SE 551) (1898). "At common law a strict and literal performance of the terms of the contract was required; but by rules of equity, either adopted by statute or recognized by the courts, a substantial compliance with the terms of the contract is sufficient . . ." *Henderson,* supra, at 222. Under the facts of this case, we believe Freeport substantially complied with the contract terms and did not materially breach. See *Evans Clay Co. v. Sims,* 250 Ga. 173 (296 SE2d 587) (1982).

---

[1] This appeal comes to us as a granted interlocutory application under Code Ann. § 6-701 (a) (2) (A).

The lease contract contemplated that the Dennards would receive 12 1/2 cents for each ton of refined kaolin removed from their property. Under Freeport's substitute weight determination, Mrs. Dennard will receive at least 12 1/2 cents for each ton of refined kaolin which comes from her property. Additionally, however, she will receive 12 1/2 cents for every ton of sand, grit, fill and overburden which is removed from her property from which the refined kaolin must be extracted. The additional consideration which Mrs. Dennard receives does not materially alter the consideration for which her predecessor bargained. Mrs. Dennard suffers no damage by use of the substitute weight determination, she gains a monetary benefit.[2] Under the facts, we agree with the trial judge that appellee substantially complied with the contract provisions and did not materially breach.

2. The trial judge interpreted the phrase ". . . with the right to mine such kaolin and bauxite, as tenant deems to be commercially profitable . . ." to mean that Freeport could utilize subjective standards in determining commercial profitability, limited only by its good faith. Appellant argues this phrase means that commercial profitability should be based on an objective, "reasonably prudent mine operator" standard.

The plain language of this contract clause indicates the parties intended this to be a subjective determination. We will not read the phrase ". . . as tenant deems . . ." out of this contract clause to create an objective standard, as appellant would have us do. See *MacDougald Constr. Co. v. State Hwy. Dept.,* 125 Ga. App. 591 (1) (188 SE2d 405) (1972). This is not a case in which the parties were silent as to what standard of conduct should govern the mining operation. It is unnecessary to look for implications or implied obligations in the lease contract. Here, the written terms of the contract set out the obligations of the parties and will govern their conduct.

Appellant argues, however, that this standard must be considered objective because of the assignment and delegation of the tenant's rights and duties under this lease contract from the original tenant — P. W. Martin Gordon Clays, Inc. — to the current tenant — Freeport. Appellant points out that while contract rights and duties

---

[2] One party may not render a performance or give a consideration which is materially different, and still substantially comply with those contract terms generally. See generally, Calamari and Perillo, The Law of Contracts, pp. 248-250. Here, however, there is substantial compliance because the lessor received the exact bargained-for consideration plus additional consideration which did not in any way reduce or alter the value of the original bargained-for consideration.

are generally assignable and delegable (Code Ann. § 85-1803), duties may not be delegated where performance by the delegate would materially vary from the performance required by the original obligor. Restatement of Law, Contracts, 2d, § 317. Consequently, our courts should only give effect to an assignment if there are objective standards by which the assignee's performance can be measured.

While this argument has much appeal when considered in the abstract, it fails when the particular facts of this case are considered. Although a duty is generally not delegable where performance by the delegate would vary materially from performance by the original obligor, the parties may nonetheless agree to such an assignment or delegation. Restatement of Law, Contracts, 2d, § 323 provides:

"(1) A term of a contract manifesting an obligor's assent to the future assignment of a right or an obligee's assent to the future delegation of the performance of a duty or condition is effective despite any subsequent objection." Here, the terms of the contract manifest the assent of the parties to the free assignability and delegability of rights and duties under the lease contract.

Comment (a) to this Restatement section points out that "the assent of the obligor is not ordinarily necessary to make an assignment effective. But his assent may operate to preclude objection based on a change in his duty, burden or risk in his chance of obtaining return performance."

Comment (b) explains that "[w]hether there is a manifestation of assent to assignment or delegation, however, depends on the interpretation of the contract as a whole." Restatement of Law, Contracts, 2d, § 323, Comment (b).

Looking at this lease contract as a whole, we believe there was clear assent to the assignability and delegability of all the contract terms. The language of the contract clearly contemplates the free assignment and delegation of all rights and duties under the contract, as shown in its paragraph (13): "The rights, powers, privileges, interests and title herein granted shall be held, owned, used and enjoyed by the parties hereto and their heirs, executors, administrators, successors and assigns; and all obligations herein created shall be binding against them in like manner and to the same extent that they bind the parties hereto." We find no other terms in this contract, nor do the parties point to any particular circumstances, which indicate that this assent to assignability was intended to be limited.

The conduct of the parties subsequent to the lease agreement supports this view. Neither of the current parties to this lease contract were original parties to the contract. Both parties acquired the full rights and obligations of the original parties through one of

the methods of transfer contemplated in paragraph (13) of the contract. Mrs. Dennard assumed her status as a party to the lease contract as Mr. Dennard's heir. Similarly, Freeport assumed all rights and obligations as the tenant in this lease through assignment. In fact, until the initiation of this suit, some 38 years after the lease contract was entered, the conduct of the parties has manifested an assent to all assignments and delegations. Neither party will now be permitted to object.

3. We also find the cross-appellants' Motions to Dismiss to be without merit. Cross-appellants argue that Baldwin County venue is predicated on Code Ann. §§ 2-4303 and 3-202 even though substantial equitable relief in this case is only sought against the corporate parties, i. e., Freeport Minerals Company and Freeport Kaolin Company, whose registered offices are not in Baldwin County, but in Fulton County. They argue that although no real equitable relief is sought against the individual parties, other than in their capacities as officers and agents of the corporate parties, the individual parties were named in this suit because they are residents of Baldwin County in order to justify venue in Baldwin County.

Cross-appellants are correct that the venue of an equitable action lies in "the county where a defendant resides against whom substantial equitable relief is prayed." Code Ann. § 2-4303. However, the pleadings allege a tort claim in addition to the equitable claim. This brings into consideration Code Ann. § 2-4304 which provides: "Suits against . . . joint trespassers, residing in different counties, may be tried in either county." We have interpreted this section to mean that an action for injunction may be brought in the county of residence of a joint tortfeasor even though he is only an employee acting under the direction of his (joint-tortfeasor) corporation, which is a resident of another county. *J. D. Jewell, Inc. v. Hancock,* 226 Ga. 480 (175 SE2d 847) (1970); *Bennett v. Bagwell & Stewart, Inc.,* 214 Ga. 115 (103 SE2d 561) (1958).

In the amended complaint in this case, it is clear that the individual corporate employees and officers named as parties were the individuals allegedly responsible for the damages and the tortious activities sought to be enjoined. Because they are properly named as joint-tortfeasors in this action, venue is proper in Baldwin County.

4. Finally, cross-appellants argue that the trial judge abused his discretion by enjoining the use of the kaolin from Dennard's property currently in stockpile. The judgment on the prayers for interlocutory injunction reflects that the court enjoined cross-appellants "from removing, or otherwise using any and all such clay until further order of this court. This injunction is intended to preserve, insofar as possible, the status of all clay heretofore or hereafter removed from

plaintiff's land until a trial of the issues by a jury or until further order of the Court." Under the facts of this case, we find no abuse of discretion.

*Judgment affirmed. All the Justices concur, except Bell, J., not participating.*

DECIDED NOVEMBER 10, 1982 —
REHEARING DENIED NOVEMBER 29, 1982 IN CASE NO. 38867.

*Dickens, Mangum, Burns & Moore, Charles E. Moore,* for appellant.

*Martin, Snow, Grant & Napier, George C. Grant,* for appellees.

*Harry L. Cashin, Jr., William T. McKenzie,* amicus curiae.