A00A1208. OUTDOOR SYSTEMS, INC. v. WOOD et al.
(543 SE2d 414)

POPE, Presiding Judge.

This dispute over a lease for a parcel of land and a billboard raises a question of standing.

On September 23, 1986, National Advertising Company ("National") entered into an agreement with Robert Vinson to lease a small parcel of real property in Fulton County upon which it erected and maintained an outdoor advertising sign. The lease established the term as follows: "The term of this lease shall commence on November 1, 1986, and . . . shall continue for an initial term of ten years from the first day of the first month following erection of the advertising display(s) (hereinafter called 'the effective date')."

On July 21, 1987, the same parties entered into an almost identical agreement for the same property. This second agreement apparently replaced the first because the parties agree that this is the operative agreement. This agreement established the term as follows: "The term of this lease shall commence on September 1, 1987, and . . . shall continue for an initial term of ten years from the first day of the first month following erection of the advertising display(s) (hereinafter called 'the effective date')." The parties agree that the sign was built on or about December 10, 1987. The lease further pro-

vided that it would continue thereafter at the option of the lessee on the same terms, "until terminated as of any subsequent anniversary of the effective date by written notice of termination given not less than sixty days prior to such anniversary date by either the lessor or lessee." The parties amended the lease in 1992 to alter the rental rate. The amendment, signed by both National and Vinson, does not purport to change the effective date of the agreement, but in a recital, it refers to the "effective date" as "September 1, 1987."

In a letter dated August 7, 1996, Vinson gave notice that it was terminating the "September 23, 1986" agreement and that the termination would be effective November 1, 1996. In April 1997, Vinson spoke with Randy Whitaker of National and reminded him of the letter of termination and the need to begin negotiations on a new lease.[1] On April 22, 1997, Vinson sent a memorandum to National proposing terms for a new agreement. On April 28, 1997, Vinson received a letter from National indicating that an agreement had been reached to "renew our sign lease commencing September 1, 1997 for ten years." But on July 16, 1997, Vinson wrote National regarding "the renewal contract I sent to you on June 4, 1997. . . ." The letter went on to say, "This Letter is to remind you that the present lease expires on August 31, 1997. If a new lease is not fully executed by that date, by your company, myself and Dr. Goldman, the billboard will need to be removed from the property." On August 4, National sent a lease agreement to Vinson for his signature. Vinson sent a counteroffer to National. But Vinson never agreed with the terms National sought, and no agreement was reached.

On August 15, 1997, Outdoor Systems, Inc. ("Outdoor") purchased all of National's common stock. Thereafter, Outdoor began to correspond with Vinson about the lease. Specifically, on September 18, 1997, Outdoor sent a renewal agreement regarding the lease to Vinson for his signature. Vinson never signed the agreement.

In October 1997, Vinson allegedly allowed Jere Wood to place campaign signs on the billboard during his campaign for mayor of Roswell.

On November 18, 1997, Outdoor brought suit seeking a declaratory judgment that the lease had renewed by its own terms on an annual basis beginning August 31, 1997, on the grounds that neither Outdoor, National nor Vinson gave proper notice of termination at least 60 days in advance of the anniversary date of the effective date of the second lease.[2] Outdoor also claimed that Vinson and Wood

---

[1] Although the trial court struck various paragraphs in Vinson's affidavit because they contained hearsay, Vinson may testify as to his own remarks in his conversations with National.

[2] Although Outdoor initially alleged that the lease commenced on January 1, 1988, the

breached the lease, trespassed, and wrongfully took possession of the billboard and replaced the advertising with campaign signs. Vinson filed a counterclaim for wrongful possession and trespass by Outdoor.

Approximately six months after filing suit, National purported to assign its rights in the lease to Outdoor effective retroactive to August 15, 1997. The assignment was not filed in the case until September 1998.

Outdoor eventually moved for partial summary judgment seeking a determination that the lease remained in effect in accordance with its terms through August 31, 1999. Vinson and Wood sought summary judgment of Outdoor's claims on the grounds that the lease was properly terminated on August 31, 1997, that Outdoor did not have standing to sue, that the lease was not transferable, and that it was not even assigned until after the lawsuit was filed. The trial court granted Vinson's and Wood's motions and denied Outdoor's. Outdoor appeals.

1. *Standing to Sue.* The trial court held that Outdoor did not have standing to sue because there was no contract between Outdoor and Vinson when suit was filed and the lease was not assigned until later. The court relied on *MacIntosh v. Marvin M. Black Co.*, 114 Ga. App. 777 (1) (152 SE2d 804) (1966). That case held: "An action brought by the assignee of a written contract in its own name must affirmatively show that the transfer or assignment was in writing in order to withstand a proper demurrer." Id. But that case does not address the exact situation here where the lessee purportedly executed a written assignment of the lease, after suit was filed, that purports to be effective prior to the suit.

Outdoor's trespass claim and its claim that the contract renewed automatically must be analyzed separately because they are based on different principles of law.

(a) *The Trespass Claim.* National was the lessee at the time of the alleged trespass. Although Outdoor had already purchased all of National's stock, there is nothing in the record to show that National was not still a valid corporate entity at the time of the alleged trespass. "Unlike a merged company, a corporation whose stock is acquired usually remains in business as a subsidiary of the acquiring corporation." *United States v. Philadelphia Nat. Bank*, 374 U. S. 321, 389 (83 SC 1715, 10 LE2d 915) (1963). Indeed, the written assignment from National to Outdoor executed in 1998 indicates that National still existed as a separate entity at that time. Thus, in order for Outdoor to pursue the trespass claim in its own name, it must

first day of the first month after the sign was built, it later amended its complaint to allege that it commenced on September 1, 1987, in accordance with the August 17, 1992 amendment.

have obtained that claim from National.

Although a trespass claim may be assignable, see OCGA § 44-12-24, National never specifically assigned the cause of action to Outdoor. Rather, it purported to assign "its right, title and interest as lessee or tenant in and to the Lease, . . . and all rights, powers, and privileges associated therewith." The law in Georgia is that a cause of action for trespass does not run with the land even when a fee simple interest is conveyed. *Rome Kraft Co. v. Davis*, 213 Ga. 899, 901-902 (102 SE2d 571) (1958). In that case, the Supreme Court held that a cause of action did not pass to the transferee of property even though the conveyance included "all rights, remedies, and powers" contained in the security deed. Id. "[A] conveyance of land, without more, does not assign to the grantee therein a right of action resulting from a trespass previously committed on such land." Id. at 901-902. It follows that a cause of action for trespass does not pass with an assignment of a lease for real property. Thus, the lease assignment did not convey the cause of action for trespass.

Nor can Outdoor claim that it was the lessee at the time of the alleged trespass just because the assignment was retroactive to before the trespass occurred. It is true that the parties to a contract may execute a contract on one date stating that it is effective retroactive to an earlier date:

> It is elemental that contracting parties may agree to give retroactive effect to their contracts as they may see fit. And, it is fundamental that where *parties to an agreement* expressly provide that a written contract be entered into as of an earlier date than that on which it was executed, the agreement is effective retroactively as of the earlier date and *the parties* are bound thereby.

(Citation and punctuation omitted; emphasis supplied.) *American Cyanamid Co. v. Ring*, 248 Ga. 673, 675 (286 SE2d 1) (1982). As shown by the above quotation, the retroactive date is effective between the parties to the agreement. We find no case law to support the proposition that the retroactive date is effective against third parties to the agreement. And, such a rule would lead to anomalous results in this case. Thus, the trial court correctly ruled that Outdoor has no standing to pursue the trespass claim.

(b) *Renewal of the Lease.* Outdoor contends it has standing based on the lease assignment to assert that the lease automatically renewed because Vinson did not give the proper notice of termination and therefore Vinson has breached the lease. The lease contemplates assignment. Paragraph 8 of the lease provides: "This lease . . . shall inure to the benefit of and be binding upon the parties hereto and to

their respective tenants, heirs, successors, personal representatives, executors, administrators, and assigns." See *Dennard v. Freeport Minerals Co.*, 250 Ga. 330, 334 (2) (297 SE2d 222) (1982).

Vinson contends that he never consented to an assignment. But, as shown in *Dennard*, the above-quoted clause indicates "clear assent to the assignability and delegability of all the contract terms." Id. Thus, Vinson had consented in advance to an assignment. Accordingly, Outdoor has standing to assert that the lease automatically renewed. In this instance, the fact that the assignment is retroactive does not affect Vinson's rights. Rather, Outdoor simply stands in the shoes of National.

2. *Notice of Termination.* Outdoor contends that the undisputed facts show that Vinson failed to give proper notice of termination and that therefore the lease automatically renewed in accordance with its terms beginning August 31, 1997, and continuing through August 31, 1999. Vinson claims that the undisputed facts show that he gave proper notice of termination. We hold that there is an issue of fact.

As set forth above, Vinson gave an ambiguous notice of termination on August 7, 1996. Although the lease was not due to terminate until the fall of 1997, the notice stated that the lease was being terminated on November 1, 1996. Yet the parties continued to operate under the lease past November 1, 1996. Vinson and National then had discussions over the course of the next year regarding a possible new lease, and Vinson reminded National of the letter of termination. In July 1997, Vinson sent a second letter that indicated that the present lease was due to expire on August 31, 1997. But that letter is inconsistent with the earlier letter, although it could be consistent with the dialogue between the parties. That letter is also insufficient standing alone to constitute notice of termination because it was not sent at least 60 days in advance of the termination date as required by the lease. The record does not contain any evidence to show that Vinson and National agreed that the ambiguous notice of termination was sufficient notice under the circumstances, although the letter suggests that they did. Finally, some of the correspondence between Vinson and National refers to there being a "renewal agreement."

Although there is no contrary evidence from National, Vinson's evidence of termination is contradicted by the language of the contract itself and the ambiguous nature of the continuing discussions between the parties. A jury will have to decide whether notice was sufficient, whether National agreed that it was, or whether National waived any complaint about notice. "It is . . . well-recognized that a party to a contract 'may waive contractual provisions for his benefit.' [Cits.]" *Kusuma v. Metametrix*, 191 Ga. App. 255, 257 (3) (381 SE2d 322) (1989).

Vinson argues that under *Solon Automated Svcs. v. Corp. of Mercer Univ.*, 221 Ga. App. 856, 857-858 (1) (473 SE2d 544) (1996), he is entitled to summary judgment because the notice he gave was sufficient. But here, unlike in *Solon*, the allegedly faulty notice referred to the wrong termination date, and the parties continued to operate under the lease after that date thus making the effect of the early notice unclear. The simple error in the notice of termination in *Solon* only resulted in the tenant having more than the required notice of termination.

The trial court did not err in denying summary judgment to Outdoor or granting summary judgment in favor of Wood. (The only claims against Wood were based on the alleged trespass.) But the court erred in granting summary judgment to Vinson on the claim of wrongful termination of the lease.

*Judgment affirmed in part and reversed in part. Miller and Mikell, JJ., concur.*

DECIDED DECEMBER 1, 2000 —
RECONSIDERATION DENIED DECEMBER 13, 2000 — 

*Schreeder, Wheeler & Flint, David H. Flint, Mark W. Forsling*, for appellant.
*Wood & Perry, Jere F. Wood, Mark B. McManus*, for appellees.