A01A0798, A01A0799, A01A0800, A01A0801. CGU LIFE
INSURANCE COMPANY et al. v. SINGER ASSET FINANCE
COMPANY, LLC et al.; and vice versa.
(553 SE2d 8)

BLACKBURN, Chief Judge.

These cases come to us on the grant of interlocutory appeal. They involve issues of first impression as to the limitations on the right of a plaintiff in tort to sell or assign future payments to which such plaintiff is entitled under tax-preferred settlement agreements containing specific language precluding such sale or assignment. CGU Life Insurance Company of America,[1] CGU Annuity Service Corporation,[2] and CGU Insurance Company[3] (collectively CGU) filed the underlying declaratory judgment actions seeking to have the sales of certain of the Revills' structured settlement rights under their settlement agreement with CGU, sold and assigned to Singer Asset Finance Company (Singer), for the present payment of a discounted lump sum to each of the Revills, declared invalid, based on the specific language of their contracts with CGU.

Singer joined both Christopher Revill and Jonathan Revill in their individual counterclaims, seeking a declaration that the sales were valid, and alleging tortious interference by CGU with contractual relations between Singer and each of the Revills for the sale and assignment of some of the future payments due them under the Revills' contracts with CGU. Singer provided counsel for itself and the Revills in each of the cases.

CGU filed a motion for summary judgment on the above grounds, and each of the Revills, joined by Singer in each case, filed a

---

[1] F/k/a Commercial Union Life Insurance Company.
[2] F/k/a CU Annuity Service Corporation.
[3] F/k/a Commercial Union Insurance Company.

cross-motion for partial summary judgment as to the validity of their sale and assignment agreements. After hearing argument, the trial court entered an order granting partial summary judgment to each of the Revills and Singer as to the validity of the sale and denying CGU's motions for summary judgment. As the procedure and the issues are essentially identical in these two sets of appeals, they will be addressed jointly.[4]

The standard of review employed by this court in reviewing the trial court's ruling on summary judgment is as follows:

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[5]

The evidence in the record, which is undisputed by the parties, shows that on November 30, 1994, the Revills filed a civil action against Fred Jones Enterprises, Inc. and James Cooper regarding a car accident in which their mother was killed. On May 22, 1997, CGU Insurance Company (CGU Insurance), the liability insurer for Fred Jones Enterprises and Cooper, reached settlement agreements with both Christopher and Jonathan Revill, which provided for a structured settlement. The terms thereof included the same initial lump sum cash payment and the same provision for five additional major payments over a twenty-year period. While each agreement provided for monthly payments for a period of ten years, the amount of such payment for Jonathan was $500.01.[6] The amount of the monthly payments for a ten-year period for Christopher was $1,000.[7] Christopher, born April 3, 1980, was a minor at that time, and his guardian

---

[4] CGU's appeal from the ruling in its action against Singer and Christopher Revill is Case No. A01A0798; Singer and Christopher Revill's cross-appeal from the ruling in that action is Case No. A01A0799; CGU's appeal from the ruling in its action against Singer and Jonathan Revill is Case No. A01A0800; and Singer and Jonathan Revill's cross-appeal in that action is Case No. A01A0801.

[5] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[6] *Jonathan Revill's settlement agreement* on May 22, 1997, *provided* for payment to him of an initial cash payment of $239,975 and *payments of $500.01 per month, for a period of ten years*, beginning June 1, 1997. It also provided for the following cash payments to Jonathan Revill: $25,000.01 on July 1, 2007; $50,000.07 on July 1, 2012; $100,000 on July 1, 2017; $135,000 on July 1, 2022; and $150,000.10 on July 1, 2027.

[7] *Christopher Revill's settlement agreement* on May 22, 1997, *provided* for payment to him of an initial cash payment of $239,975 and *payments of $1,000 per month, for a period of ten years*, beginning on June 1, 1997. It also provided for the following cash payments to

ad litem was H. Jack Short.

The basic language of all of the documents prepared by CGU and Singer for both Christopher's and Jonathan's agreements were the same. There was a slight variance in the dates of the monthly payments assigned to Singer by Christopher and Jonathan. Although the amount of the monthly payments assigned by both Christopher and Jonathan were the same, there was a difference in the amount of such monthly payments to Christopher and Jonathan under their agreements with CGU.

The settlement agreement between the Revills and CGU Insurance stated that the future payments could not be: "accelerated, deferred, increased or decreased . . . nor shall [the Revills] have the power to sell or mortgage or encumber same, or any part thereof, nor anticipate the same, or any part thereof, by assignment or otherwise."

The settlement agreement further provided that:

> The Parties hereto acknowledge and agree that [CGU] may make a "qualified assignment" within the meaning of Section 130 (c) of the Internal Revenue Code of 1986, as amended, of [CGU's] liability to make the periodic payments required herein. Any such assignment, if made, shall be accepted by [the Revills] without right of rejection and shall completely release and discharge the Insured, James A. Cooper and the Insurer from such obligations hereunder as are assigned to the assignee. . . . If the liability to make the periodic payments is assigned by way of a "qualified assignment," it is agreed: (a) That periodic payments from the assignee cannot be accelerated, deferred, increased or decreased by the Plaintiff.

Settlement Agreements, May 22, 1997, pp. 3-4.

Pursuant to the agreements between CGU and the Revills, CGU Insurance executed a qualified assignment agreement with CGU Annuity Service Corporation (CGU Annuity), assigning CGU Annuity the liability to make the future payments to the Revills. CGU Annuity funded its obligation by purchasing a single premium annuity from CGU Life Insurance Company of America (CGU Life). In addition to agreeing to the assignment from CGU Insurance to CGU Annuity, by the express language of the settlement agreement, the Revills also consented to the assignment and CGU Annuity's assumption of liability as expressly demonstrated by their signing

---

Christopher Revill: $25,000.01 on July 1, 2007; $50,000.07 on July 1, 2012; $100,000 on July 1, 2017; $135,000 on July 1, 2022; and $150,000.10 on July 1, 2027.

the qualified assignment agreement and release in addition to the settlement agreement.

On July 12, 1999, Singer entered into a purchase agreement with each of the Revills in which each of them sold and assigned to Singer some, but not all, of their rights to future payments under their settlement agreements with CGU Insurance for a present lump sum payment. The Revills also signed irrevocable powers of attorney to Singer, allowing Singer to receive payments from CGU Life directly.

Christopher Revill seeks to sell $71,000.93 of his future payments to Singer for a discounted lump sum payment of $33,295, which would be a discount rate of 15.42 percent.[8] Jonathan Revill seeks to sell $69,500.90 of his future payments to Singer for a discounted lump sum payment of $32,215, which would be a discount rate of 15.42 percent.[9]

In its order, the trial court made five specific findings of law on the legal contentions of Singer and the Revills, rejecting their positions on items one through four and adopting their view that this case is controlled by *Mail Concepts v. Foote & Davies, Inc.*[10] on item five. The following is a summary of the trial court's holdings: (1) The Uniform Commercial Code does not apply to the attempted sale from the Revills to Singer; (2) Georgia's new disclosure law for factoring transactions (OCGA § 51-12-71 et seq.) does not show a legislative intent to make all structured settlements assignable or nonassignable; (3) Georgia law does not require that, in order for nonassignment provisions to be enforceable, they must specifically state that any attempted assignment is void, as argued by Singer and the Revills; (4) Georgia law recognizes that contract rights are generally assigna-

---

[8] The purchase agreement with Singer provides that in exchange for a present payment of $33,295, Christopher Revill, then 19, sells and assigns unto Singer his rights to $500.01 per month of the $1,000 monthly payment, during the period of October 1, 1999, through May 1, 2007; and the lump sum payment of $25,000.01, due July 1, 2007.

This leaves unassigned and payable to Christopher by CGU Annuity, the remainder of the monthly payments during the above period, said monthly sum being $499.99. It also leaves unassigned and payable by CGU, the following lump sum payments: $50,000.07 on July 1, 2012; $100,000 on July 1, 2017; $135,000 on July 1, 2022; and $150,000.10 on July 1, 2027.

[9] The purchase agreement with Singer provides that in exchange for a present payment of $32,215, Jonathan Revill sells and assigns unto Singer his rights to the monthly payments in the amount of $500.01, during the period January 1, 2000, through and including May 1, 2007; and the lump sum payment of $25,000.01, due July 1, 2007. The aggregate amount of the assigned payments is $69,500.90. The present value of all transferred payments is $32,215, assuming a monthly compounding, of 15.42 percent and an assumed funding date of August 2, 1999.

This leaves unassigned and payable to Jonathan by CGU Annuity the following lump sum payments: $50,000.07 on July 1, 2012; $100,000 on July 1, 2017; $135,000 on July 1, 2022; and $150,000.10 on July 1, 2027.

[10] *Mail Concepts v. Foote & Davies, Inc.*, 200 Ga. App. 778 (409 SE2d 567) (1991).

ble but parties are free to contract this right away; but (5) *Mail Concepts,* supra, controlled the present case and required a ruling against the enforcement of the nonassignment provisions here.

In order to resolve the issues in this appeal, it is important to understand the nature of structured settlements of this type:

> Structured settlements are a type of settlement designed to provide certain tax advantages. In a typical personal injury settlement, a plaintiff who receives a lump-sum payment may exclude this payment from taxable income under I.R.C. § 104 (a) (2). . . . However, any return from the plaintiff's investment of the lump-sum payment is taxable investment income. In contrast, in a structured settlement the claimant receives periodic payments rather than a lump sum, and all of these payments are considered damages received on account of personal injuries or sickness and are thus excludable from income.

(Citations and punctuation omitted.) *Western Union Life Assurance Co. v. Hayden.*[11]

Under a structured settlement agreement, a defendant, its insurer, or its assignee is obligated to make the payments to the plaintiff. To do so, the defendant or its insurer assigns the obligations to make the payments to a "qualified assignee" who purchases an annuity for the purpose of making the payments. Under current Internal Revenue Service regulations, the qualified assignee is eligible to have any amounts it receives from the annuity excluded from its gross income so long as, among other things, such periodic payments are not "accelerated, deferred, increased, or decreased by the recipient." 26 USC § 130 (c) (2) (B). Should the IRS determine that the sale or assignment of future benefits to a third party violates the above-listed conditions, such a transfer could jeopardize the tax advantages of the structured settlement agreements under IRS regulations.

### Case Nos. A01A0798 and A01A0800

1. In its first enumeration of error, CGU contends that the trial court erred in finding that the Revills completed all of their obligations under their respective settlement agreements, in allowing the Revills to assign their future payments in violation of a nonassignment prohibition in the settlement contract between CGU and the Revills, and in ruling that *Mail Concepts*, supra, controls this case.

---

[11] *Western Union Life Assurance Co. v. Hayden*, 64 F3d 833, 839 (3rd Cir. 1995).

In its order, the trial court held inter alia, that:

4. The Court finds that parties to a contract are free to "contract to waive numerous and substantial rights." *Orkin Exterminating Co. v. Stevens.*[12] Nevertheless, under the law of Georgia as established by the Georgia Court of Appeals in *Mail Concepts*[, supra at 781], the Court finds that the assignment of the Assigned Payments as evidenced by the Purchase Agreement entered into by Singer and Mr. Revill is valid and effective. In *Mail Concepts*, the Court of Appeals held that "once a party to a contract performs its obligations . . . its right to enforce the other party's liability under the contract may be assigned without the other party's consent even if the contract contains a non-assignment clause." See also *Cowart v. Singletary*;[13] *Rucker v. Corbin*.[14] In this case, the settlement agreement has been fully executed. Mr. Revill agreed to a release, and Plaintiffs agreed to compensate Mr. Revill by making the Periodic Payments. Mr. Revill did, in fact, release his claims. Thus, the only remaining obligation is the payment of money by Plaintiffs. For the foregoing reasons, the Court hereby grants Defendants' cross-motion for partial summary judgment finding that the purchase agreement entered into between Singer and Mr. Revill is valid and effective under Georgia law. The Court denies Plaintiffs' motion for summary judgment.

Order, September 12, 2000, Superior Court of Colquitt County.

*Mail Concepts* involved a contract for imprinting, packing, labeling, and shipping magazines in exchange for payment. All obligations had been performed in that case, except payment. In *Mail Concepts,* language of the document did not preclude the assignment of payment; it merely required the approval by Mail Concepts, Inc. of such an assignment.

Mail Concepts refused to pay Peach State's invoice. Peach State was subsequently liquidated, and the account receivable was assigned to Foote & Davies, Inc. without the prior consent of Mail Concepts. We held that under those facts, the nonassignment clause in the contract was unenforceable under "general legal principles concerning assignment of contract rights and obligations." *Mail Concepts*, supra at 780 (3). In essence, the holding was that Mail Concepts had no appropriate basis to withhold approval of the assign-

---

[12] *Orkin Exterminating Co. v. Stevens*, 130 Ga. App. 363, 369 (203 SE2d 587) (1979).

[13] *Cowart v. Singletary*, 140 Ga. 435 (79 SE 196) (1913).

[14] *Rucker v. Corbin*, 188 Ga. App. 182 (372 SE2d 512) (1988).

ment. This is a very different circumstance from the present case, where the sale and assignment were expressly prohibited and where such an assignment may very well be in violation of IRS regulations and could endanger the tax preferences of the structured settlements.

In *Mail Concepts*, we found that the contract at issue did not fall into one of the exceptions to the general rule in OCGA § 44-12-22, such as "agreements for personal services and those requiring peculiar skills or qualifications, [which] are inherently not assignable." *Mail Concepts*, supra at 781 (3).

Although structured settlement agreements may be assignable, we nonetheless uphold the nonassignment provision here. The Restatement of Law, 2d, Contracts, recognizes the validity of assignments, but with three important exceptions:

> (a) the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him, or (b) the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy, or (c) assignment is validly precluded by contract.

*Grieve v. Gen. American Life Ins. Co.,*[15] citing Restatement of Law, 2d, Contracts, § 317 (2). See *Dennard v. Freeport Minerals Co.*[16] (applying Restatement of Law, 2d, Contracts, § 317 in Georgia).

Here, the purpose of the nonassignment clause was to shelter the settlement funds from potential tax liability for CGU. Under the Internal Revenue Code, "qualified assignees" such as CGU Annuity, who assume the liability to make periodic payments on account of a personal injury, are eligible to have any amounts they receive pursuant to the transaction excluded from their gross income so long as such periodic payments are not "accelerated, deferred, increased, or decreased by the recipient." 26 USC § 130 (c) (2) (B). The IRS has not ruled on this issue, but the potential for jeopardizing the tax treatment of the structured settlement in the event of such a ruling clearly provides a sufficient basis for the parties to contractually preclude such a sale or assignment. A sale or assignment of future payments could constitute a violation of 26 USC § 130 (c) (2).

---

[15] *Grieve v. Gen. American Life Ins. Co.*, 58 FSupp.2d 319, 322-323 (D. Vt. 1999).
[16] *Dennard v. Freeport Minerals Co.*, 250 Ga. 330, 334 (2) (297 SE2d 222) (1982).

In *Grieve,* supra, a case involving the same issue as the present case, the U. S. District Court held inter alia:

> If Singer were the recipient of the periodic payments, it would not be entitled to exclude the sums received from its gross income under section 104 (a). General American would thus lose its eligibility for favorable tax treatment under section 130. The practical implications of this loss are open to speculation: no party to this suit could say whether General American would in fact suffer adverse tax consequences. The Court is satisfied, however, that the change of recipient materially increases a risk to General American, and as a result materially reduces the value of the contract to it.

*Grieve,* supra at 323.

*Mail Concepts* is not applicable here because the nonenforcement of the nonassignment agreement could "materially increase the burden or risk" imposed on CGU of tax liability and "the assignment is validly precluded by contract," and thus, constitutes an exception to the general rule that contracts are assignable. Therefore, the trial court erred in holding that this case is controlled by *Mail Concepts.*

2. CGU further contends that the trial court erred in failing to enforce the contract's clear and unambiguous prohibition on the sale and assignment of future payments, in denying its motion for summary judgment, and in granting Singer and the Revills' motions for partial summary judgment and in denying CGU's motions for summary judgment.

For the reasons outlined above, the trial court erred in granting Singer and the Revills' motions for partial summary judgment.

### Case Nos. A01A0799 and A01A0801

While Singer and the Revills contend that the trial court correctly held that this case is controlled by *Mail Concepts,* supra, they assert that the court erred in failing to find that the Assignment and Pledge are valid, because:

A. The public policy of Georgia recognizes the assignability of payments due under structured settlements, as evidenced by the Structured Settlement Transfer Act, OCGA § 51-12-70 et seq.

In this regard, the trial court held inter alia, that:

> 3. Defendants also assert that the public policy of Georgia, as established by the Georgia Legislature's enactment of OCGA §§ 51-12-71, et seq., recognizes the assignability of payments due under structured settlements despite the

presence of anti-assignment language. The Court finds that the Georgia Legislature has not established a public policy either disfavoring or favoring the assignability of payments under structured settlements despite anti-assignment language.

Order, September 12, 2000, Superior Court of Colquitt County.

Singer and the Revills contend that OCGA § 51-12-71 et seq. allows all sales or assignments under Georgia law. They argue that if the legislature had intended to bar all purported sales or assignments of future payments, they could have done so, but did not. This argument is clearly without merit, given the language of OCGA § 51-12-77, which provides: "Nothing contained in this article shall be construed to authorize any transfer of structural settlement payment rights in contravention of applicable law or to give effect to any transfer of structured settlement payment rights that is invalid under applicable law." OCGA § 51-12-77. A transfer of structured settlement payment rights that is made in violation of a valid contract would be "invalid under applicable law," and such transfer would be unenforceable. We affirm the trial court's ruling on this issue.

B. Article 9 of the UCC, as codified in Georgia at OCGA § 11-9-318 (4), bars any attempt to restrict the free alienation of property, including the rights to receive structured settlement payments.

In this regard, the trial court held inter alia, that:

1. Defendants assert that OCGA § 11-9-318 (4) (Section 9-318 (4) of the Uniform Commercial Code as codified in Georgia) applies to invalidate the purported restrictions on assignment contained in the settlement agreement and Qualified Assignment. Plaintiffs assert that the UCC does not apply to the transactions at issue because Plaintiffs contend that Mr. Revill and Singer did not enter into a secured transaction. The Court concludes that the UCC does not apply to this transaction. The Court does not address or make any holding with respect to whether any of the exclusions contained in the UCC and raised by Plaintiffs apply to this transaction.

Order, September 12, 2000, Superior Court of Colquitt County. We affirm the trial court's ruling on this issue.

C. The provisions of the Structured Settlement Agreement and Uniform Qualified Assignment and Release purporting to bar assignments of structured settlement payments are unenforceable because they fail to make assignments expressly void or otherwise ineffective,

as required by Section 322 of the Restatement of Law, 2d, Contracts. In this regard, the trial court held inter alia, that:

> 2. Defendants argue that under the common law of contracts, as set forth in Section 322 of the Restatement Second of Contracts, anti-assignment language must address the consequences of an assignment in order to render an assignment ineffective. Specially, Defendants contend that anti-assignment language must specify that any assignment is "invalid," "void" or that the obligor has the right to disregard any assignment. The Court finds that Georgia law does not require such specific language.

Order, September 12, 2000, Superior Court of Colquitt County. We affirm the trial court's ruling on this issue.

D. Both the Settlement Agreement and Uniform Qualified Assignment and Release are ambiguous and therefore must be construed in favor of allowing the Assignment and Pledge.

A review of the Settlement Agreement and Uniform Qualified Assignment and Release fails to demonstrate any ambiguity, and this argument is without merit. We affirm the trial court's ruling on this issue.

Singer and the Revills further argue that CGU would not suffer any negative tax consequences as a result of the assignment. Other courts which have addressed this issue have found there to be increased risks and burdens imposed on qualified assignees such as CGU Annuity because an assignment may result in the loss of the tax-favored status under 26 USC § 130. See *Liberty Life Assurance Co. &c. v. Stone Street Capital*;[17] *Grieve*, supra at 323; *CGU Life Ins. v. Metro. Mtg. & Svcs.*,[18] where the U. S. District Court for the Eastern District of Pennsylvania upheld and enforced an identical nonassignment provision and prevented the attempted sale based on the plain language of the documents and the potential for adverse tax consequences.

In upholding CGU's position, the court stated that indeed, "the potential for increased tax liability is the risk which the anti-assignment clause was designed to protect against." *CGU Life*, supra at 679. Even if any challenge to the tax preference of structured settlements that were assigned resulted in a favorable result, the cost of litigation and attorney fees alone would justify a contractual preclusion of such a sale or assignment.

---

[17] *Liberty Life Assurance Co. &c. v. Stone Street Capital*, 93 FSupp.2d 630, 636 (D. Md. 2000).

[18] *CGU Life Ins. v. Metro. Mtg. & Svcs.*, 131 FSupp.2d 670 (E.D. Pa. 2001).

The Third Circuit in *Western Union Life Assurance Co. v. Hayden*, supra, reached a different result. We note however, that the IRS was not a party in *Hayden* and, therefore, is not bound by that decision. The uncertainty amongst the federal courts themselves demonstrates that CGU is exposed to the risk of adverse tax consequences as a result of the assignment which would justify a contractual provision precluding such sale or assignment.

In *Liberty Life Assurance Co.*, supra, the court conducted a comprehensive analysis of the same issues and identical arguments made by Singer and the Revills and rejected them. The court stated:

> Plaintiffs first argue that White's assignment to Stone Street is invalid under § 317 (2) (a) because it materially increases the burden or risk imposed on Keyport. More specifically, plaintiffs assert that if White is permitted to assign the Periodic Payments to Stone Street, the plaintiffs will no longer be able to predict the tax implications, accounting implications, administrative costs, and risk of exposure to competing claims to future settlement payments. According to plaintiffs, predictability is a critical element of transactions involving long-term liability, and they attempted to protect themselves from uncertainty by placing an anti-assignment clause in the Settlement Agreement. In particular, the plaintiffs fear the loss of predictability regarding the favorable tax treatment that they currently receive. Under § 130 of the Internal Revenue Code, insurance companies, like Keyport, who assume the liability to make periodic payments on account of a personal injury are eligible for favorable tax treatment if certain conditions are satisfied. While the parties disagree about whether an assignment of the right to receive periodic payments affects this tax treatment, they do agree about the basic operation of the tax provisions in a structured settlement. According to the authorities submitted to the Court by the parties, a typical personal injury structured settlement based on the facts of this case would operate as follows: First, the tortfeasor's insurer, Liberty Mutual, would assign to another company, Keyport, its liability to make the periodic payments to the plaintiff, White. In exchange for assuming its liability, Liberty Mutual would pay Keyport a lump sum, which Liberty Mutual could immediately deduct from its gross income. Keyport would then use the lump sum to purchase an annuity to fund the periodic payments to White. If the transaction met the requirements of § 130, Keyport would not have to report the lump sum as income until it received the annuity payments, at

which time it would be entitled to an offsetting deduction for periodic payments made to White. And if White met the requirements of § 104 (a) (2), he could exclude the periodic payments from his gross income, including any portion of the periodic payment that represents interest income generated by the annuity. Taken together, these tax rules effectively provide that nobody is ever taxed on the periodic payments. In the absence of the favorable tax treatment, however, Keyport may have to immediately report as income all of the funds it received from Liberty Mutual, and it would not be entitled to deductions until it subsequently made the periodic payments. For Keyport to receive this favorable tax treatment, the assignment of Liberty Mutual's liability to Keyport must be a "qualified assignment" within the meaning of § 130 (c). An assignment is only a "qualified assignment" if it meets certain requirements. Relevant here are the requirements under sections 130 (c) (2) (B) and (D). Under § 130 (c) (2) (B), the "periodic payments cannot be accelerated, deferred, increased, or decreased by the recipient of such payments." In this case, plaintiffs fear that the Internal Revenue Service ("IRS") may view White's assignment as an acceleration of his periodic payments, which would prevent Keyport from complying with § 130 (c) (2) (B). Plaintiffs also fear that the assignment would prevent them from complying with § 130 (c) (2) (D), which requires that the periodic payments be excludable from the gross income of the recipient under § 104 (a). Under § 104 (a) (2), payments are only excludable from the gross income if the recipient receives the payments "on account of personal physical injuries or sickness." Plaintiffs fear that after the assignment, the IRS may no longer consider the periodic payments to be personal injury compensation, presumably because the IRS might consider the payments to White to be made "on account of" an agreement with Stone Street rather than "on account of" personal injuries. If the payments to White are not ["]on account of["] personal injuries, the payments would not be excludable from White's gross income under § 104 (a). This, in turn, would prevent Keyport from complying with § 130 (c) (2) (D). Because the IRS has not provided guidance on how it would treat an assignment of periodic payments, plaintiffs argue that White's assignment would result in a loss of predictability regarding the favorable tax treatment that it currently receives. As such, plaintiffs argue that the assignment is invalid under § 317 (2) (a) of the Restatement (Second) of Contracts because it materially increases their

burden and risks. Defendants, on the other hand, argue that the assignment does not materially affect the plaintiffs' risk or burden under § 317 (2) (a). In fact, defendants assert that the IRS, in Private Letter Ruling 119273-97, already concluded that an assignment of structured settlement payments will have no adverse tax consequences under § 130. The Court, however, is not so convinced. The private letter ruling only addresses whether an assignment of payments under a structured settlement would affect the tax status of an individual under § 104 (a) (2). See Priv. Ltr. Rul. 119273-97 at 5. Notably, the private letter ruling specifically declined to rule on the request to resolve how an assignment would affect the tax status of a party, such as Keyport, under § 130. Further, the private letter ruling states that the ruling is only directed at the taxpayer sending it, and that the ruling may not be used or cited as precedent. Id. at 6; see also 26 U.S.C. § 6110 (k) (3) (1998). . . . Consequently, the Court finds that White's assignment increases the risks and burdens imposed on plaintiffs because it deprives them of their ability to predict the costs and implications of Keyport's tax treatment under § 130. . . . Further, the inclusion of an anti-assignment clause manifests plaintiffs' concerns regarding the potential tax implications of an assignment by White. Therefore, the Court finds that White's commitment that he would not assign the Periodic Payments was a material part of the Settlement Agreement because it increased plaintiffs' ability to predict their tax liability. Because White's assignment would materially increase the burden or risk imposed on plaintiffs, the Court finds that White's assignment to Stone Street is void under § 317 (2) (a) of the Restatement (Second) of Contracts.

(Footnote omitted.) *Liberty Life*, supra at 634-637 (III).

Singer and the Revills attempt to rely on the trial court's decision in *Settlement Funding v. Jamestown Life Ins. Co.,*[19] which reliance is misplaced. *Settlement Funding* is factually distinguishable from the present case and has no application here. First, the case involved the application of the North Carolina and Virginia law of contracts, not Georgia law. Second, the nonassignment provision in *Settlement Funding* was completely different from the nonassignment provision in the present case. The settlement agreement in *Settlement Funding* did not contain any express restriction on or pro-

---

[19] *Settlement Funding v. Jamestown Life Ins. Co.*, 78 FSupp.2d 1349 (N.D. Ga. 1999).

hibition against the assignment of the Biddixes' rights to receive the periodic payments. Id. at 1356. Therefore, the analysis in that case is of no assistance in the present case.

For the reasons outlined above, we affirm the ruling of the trial court in Case Nos. A01A0799 and A01A0801.

*Judgment reversed in Case Nos. A01A0798 and A01A0800. Judgment affirmed in Case Nos. A01A0799 and A01A0801. Pope, P. J., and Mikell, J., concur.*

DECIDED JULY 11, 2001 —

*Nall & Miller, Michael D. Hostetter*, for appellants.

*Altman, Kritzer & Levick, Joseph S. Carr, Catrina C. Creswell*, for appellees.