A90A2175. TOWER FINANCIAL SERVICES, INC. v. JARRETT.
(404 SE2d 622)

BANKE, Presiding Judge.

The appellee sued the appellant herein, Tower Financial Services, Inc., along with Jesse and Rosa Smith, who are not parties to this appeal, seeking to recover actual and punitive damages based on allegations that they had defrauded him in connection with a real estate transaction. The action was filed in DeKalb County, the county of the Smiths' residence. However, after the case was called for trial, but before a jury had been selected, the fraud claim against the Smiths was dismissed, and a consent judgment was entered against them based on breach of contract. The next day, after jury selection had been completed, the appellant moved the court to dismiss the fraud claim against it or, in the alternative, to transfer the case to Fulton County, the location of its only office, arguing that with the Smiths no longer in the case, venue was no longer proper in DeKalb County. The trial court denied the motion, and the jury thereafter returned a verdict against the appellant for actual damages in the amount of $18,103.49 plus punitive damages in the amount of $21,697.03. The appellant brings this appeal from the denial of its subsequent motion for judgment notwithstanding the verdict, contending that there was no evidence to support a finding of actionable fraud on its part.

In 1985, the appellee contracted to sell a house to Mr. Smith, for $17,500, $2,000 of which was to be payable in cash at closing and the balance of which was to be financed "in the form of one Purchase Money Note from Purchaser to Seller, secured by a First Deed to Secure Debt. . . ." Mr. Smith, who was both an acquaintance of the appellee's and a licensed real estate broker, subsequently arranged to borrow $6,000 from the appellant finance company for the purpose of financing the $2,000 down payment and obtaining funds to make repairs on the house. The appellant informed Mr. Smith that it would handle the closing, and the latter hand-delivered a copy of the sale contract to its office. Subsequently, the appellant discovered a problem with the title to the property and contacted the appellee to ar-

range for its correction.

At the closing, which was performed by the appellant's corporate counsel, the appellee signed a warranty deed conveying the property to Mr. Smith and his wife, and the Smiths signed a security deed in favor of the appellant. Although the appellee testified that he thought the closing was being carried out in accordance with the terms of the sale contract, he left the meeting empty-handed, having received neither cash nor a promissory note. The appellant's counsel had no recollection of the transaction and apparently prepared no closing statement in connection with it.

Soon after the closing, either that same day or a few days later, Smith obtained a check from the appellant for $6,000 made payable to himself and the appellee jointly. He then procured the appellee's endorsement on this check, giving him in return a check for $2,000, along with a purported security deed to the property which he (Smith) had prepared personally. Mr. Smith told the appellee that this security deed would protect him in the event he did not receive the loan payments due him under the sale contract and further advised him that it was not necessary to record it because the documents already on file at the courthouse would show that he had the first mortgage on the property.

Approximately a year later, Mr. Smith borrowed an additional $46,000 from the appellant, which indebtedness was also secured by the security deed to the property which he and his wife had executed at the closing. Approximately six months later, he defaulted both on his loan payments to the appellee and on his loan payments to the appellant, whereupon the appellant foreclosed on the property, leaving the appellee with no recourse against it. It appears that the security deed which Mr. Smith had given to the appellee had not been signed by Mrs. Smith and had not been properly witnessed, with the result that it was not recordable; however, because the appellee had never attempted to record it, he had not learned of these defects. *Held*:

1. "The controlling fact which governs the retention of jurisdiction over the non-resident is the legal resolution of liability on the part of the resident." *Motor Convoy v. Brannen*, 194 Ga. App. 795, 797 (391 SE2d 671) (1990). "Moreover, a consent judgment recognizes that a verdict against the resident defendant was authorized." Id. See also *Long v. Bruner*, 171 Ga. App. 124 (1) (318 SE2d 818) (1984). Accordingly, the trial court did not err in denying the appellant's motion for dismissal or transferal of the case based on improper venue.

2. The appellant contends that the verdict was not authorized, both because there was no evidence that it made any misrepresentation to the appellee and because the evidence established as a matter of law that the appellee had failed to use due diligence to protect

himself.

"'"Fraud may exist as much in intentional concealment of material facts, as in false statements in regard to facts. One is as fraudulent as the other, if it is used as a means of deceiving the opposite party."' *Friedman v. Goodman*, 222 Ga. 613, 623 (151 SE2d 455) (1966), quoting from *Jordan v. Harber*, 172 Ga. 139 (4) (157 SE 652) (1931). 'Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties *or from the particular circumstances of the case.*' (Emphasis supplied.) OCGA § 23-2-53. See also OCGA § 51-6-2." *Clay v. Dept. of Transp.*, 198 Ga. App. 155, 157 (400 SE2d 684) (1990).

While the appellant may not, strictly speaking, have been under any obligation to protect the appellee's interests in performing the closing, it clearly was the understanding of all the parties to the transaction that the closing would be conducted in accordance with the sale contract. Although the appellant contends that there was no evidence that it was ever provided with a copy of the contract, Mr. Smith testified that he personally delivered a copy to the appellant's office and gave it to the receptionist for delivery to the vice-president. Furthermore, there simply was no legitimate basis upon which the appellant could have performed the closing except by reference to a contract. Certainly, the appellant could not reasonably have believed that the appellee was simply giving the land to Mr. and Mrs. Smith. Under the circumstances, we hold that the jury was authorized to conclude that the appellant was guilty of fraudulent concealment in failing to disclose to the appellee that the closing was being conducted in a manner which was entirely inconsistent with the sale contract.

With regard to the due diligence issue, we conclude from a review of the relevant authorities that the burden on a fraud claimant to protect himself by investigating the facts before proceeding with a transaction tends to diminish in proportion to the egregiousness of the alleged fraud. Thus, while the claimant is "bound to make inquiry and examination for himself so as to ascertain the truth" in cases where the alleged fraud "consists of general commendations or *mere expressions of opinion,* hope, expectation and the like," *Miller v. Clabby*, 178 Ga. App. 821, 822 (344 SE2d 751) (1986), it has been held that this burden does not "place the law in the untenable position of throwing a mantle of protection about people who have engaged in a cheating and swindling operation" and that "the perpetrator of a gross and vicious fraud should not be permitted to set up as a defense that the plaintiff should not have relied upon his good faith and honesty." *Smith v. Holman*, 117 Ga. App. 248, 249 (160 SE2d 533) (1968). "[W]hether, under these circumstances, plaintiff has been guilty of such negligence in not informing himself of the facts as to defeat his

right of recovery is a jury question." Id. See also *Galanty v. Kirk*, 91 Ga. App. 25, 30-31 (84 SE2d 688) (1954).

There is no question that the appellee in this case demonstrated both an overabundance of trust and a lack of sophistication in not insisting upon his cash down payment, promissory note, and security deed at the closing. However, as previously indicated, there was no basis whatever upon which the appellant could legitimately have claimed entitlement to a first security interest in the property. Rather, it is apparent from the evidence that the appellant simply abused its control over the closing to misappropriate the first security interest to which the appellee was undeniably entitled under the terms of the sale contract. We hold that it was properly left to the jury under these circumstances to determine whether the appellee's failure to take steps to protect himself against such conduct barred him from any recovery.

3. The appellant enumerates as error the admission of certain evidence "regarding the calculation of interest on the loan between the appellant and Jesse Smith." It is evident from the transcript that during his opening statement, the appellant's attorney made a comment to the effect that the appellant had lost money on the transaction. In response to this assertion, the appellee elicited testimony from the appellant's vice-president to the effect that the appellant had received $3,404.42 from the Smiths in payments on the 1985 loan and had thereafter sold the property for $19,824.44 following foreclosure, giving it total receipts on the transaction of $23,226.86. The appellant's counsel objected that this figure was "irrelevant and . . . deliberately misleading" because it included interest, arguing that "[i]f they made the interest, then the money would have been in the bank or on another loan."

In view of the fact that the appellant had interjected into the case the issue of whether it made money on the transaction, its objection to this evidence on grounds of relevance was properly overruled. Generally speaking, "[a]ny evidence is relevant which logically tends to prove or to disprove any material fact which is at issue in the case, and every act or circumstance serving to elucidate or throw light upon a material issue or issues is relevant. [Cit.] It is the accepted rule in this state that where the relevancy or competence of evidence is doubtful, it should be admitted and its weight left to the determination of the jury under appropriate instruction. [Cits.]" *Department of Transp. v. Delta Machine Prods. Co.*, 157 Ga. App. 423, 426 (278 SE2d 73) (1981).

The extent to which the loan payments received from the Smiths had or had not included interest was a matter which the appellant was entitled to develop and clarify on redirect examination. Furthermore, the appellant's account cards showing the amount of these pay-

ments had already been introduced into evidence without objection. We consequently find this enumeration of error to be wholly without merit.

*Judgment affirmed. Birdsong, P. J., and Cooper, J., concur.*

Decided March 8, 1991 —
Rehearing denied March 25, 1991 —

Spix, Krupp & Reece, Mark V. Spix, for appellant.
Robert P. Wilson, Gary C. Harris, for appellee.