A98A0224. CHANDLER et al. v. MVM CONSTRUCTION, INC. et al.
(501 SE2d 533)

Judge Harold R. Banke.

Seeking damages for fraud and attempting to rescind a home improvement contract, William Chandler and Marie Chandler sued MVM Construction, Inc. ("MVM") and Green Tree Financial Corporation f/k/a Green Tree Acceptance, Inc. ("Green Tree"). The Chandlers appeal the summary judgment awarded to Green Tree and the denial of their motion for partial summary judgment.

On September 11, 1991, the Chandlers contracted with MVM for some minor construction work and home repairs. To finance the work, the Chandlers signed a retail installment contract secured by their home of more than 40 years. MVM later assigned the retail installment contract and the deed to secure debt to Green Tree.

The Chandlers made a cash down payment of $1,200 and became obligated for $27,402 in 132 monthly payments of $204.85. When the Chandlers filed the underlying action, they had paid approximately $7,500 more. At the time of the initial transaction, both Marie Chandler and William Chandler were over 75 years old and on an extremely limited income. Marie Chandler had been completely bed-

ridden for several years. Neither had graduated from high school and William Chandler was barely literate. When they signed the five "papers," neither had any idea that they were giving MVM a deed to their home.

During a videotaped deposition conducted in their house, William Chandler pointed out various deficiencies in MVM's work, ranging from poor performance to nonperformance. He claimed that MVM did not install an awning on the front porch or weather stripping on the back door or a fence or gutters.[1] According to Chandler, the windows would not stay up, plaster washed off in the rain leaving a hole, and interior paint began peeling within six months' time. Although he admitted that he did not contact MVM to complain about or report the problems, he claimed he did not know whom to call. He testified that he could only read his name and his wife's on the paperwork. Marie Chandler, a long-term diabetic, testified that she was unable to read the print because it was too fine for her to see.[2]

The Chandlers alleged certain violations of the Consumer Credit Protection Act of 1968 (15 USC § 1601 et seq.) and the Truth in Lending Act ("TILA") (15 USC § 1605 and "Regulation Z") (12 CFR § 226.4 (c) (7) (iii)), and, inter alia, fraudulent misrepresentation of the value of the goods and services. As to the federal law violations, the Chandlers claimed that because the contract violated 15 USC § 1605 (a) by designating a $50 inspection fee as part of the amount financed instead of as a finance charge, they were entitled to rescind the agreement. They claimed that because the installment contract failed to specify when the payments were to commence, the agreement was impermissibly vague and violated CFR § 226.4 (a). They further asserted that MVM misrepresented the true value of the goods and services which the Chandlers professed were worth a mere $4,000. The Chandlers appeal the trial court's adverse judgment. *Held*:

1. MVM's designation of the $50 inspection fee as part of the amount financed did not entitle the Chandlers to rescind the contract. Even assuming arguendo that MVM improperly included the fee in the section on the amount financed, the alleged error would not constitute such a material nondisclosure as to entitle the Chandlers to rescind the contract. The total amount financed is plainly stated and the $50 fee is clearly listed on the form within the financing sec-

---

[1] According to the sales agreement, MVM agreed to perform miscellaneous tasks including, inter alia, patching and painting specified areas, replacing some rotted flooring, sheetrocking the front porch ceiling, installing a doorbell with chimes and a front porch awning, and weatherstripping the back door.

[2] She testified that she was unable to read the handwritten list of items to be performed other than the first line of print.

tion. See *Malfa v. Household Bank*, 825 FSupp. 1018 (S.D. Fla. 1993) (remedy of rescission under USC § 1535 is applicable to material violations of TILA and not to technical violations). Compare *Steele v. Ford Motor Credit Co.*, 783 F2d 1016, 1019 (11th Cir. 1986) (any overcharging of interest, even $24, can be deemed to be a material nondisclosure).

2. The Chandlers contend that a jury must resolve whether the contract's failure to provide a specific date for the start of monthly payments entitles them to exercise their right to rescind.

As a general rule, TILA disclosures are required prior to the consummation of a credit transaction. 15 USC § 1601 et seq. "The Truth in Lending Act grants a consumer the right to rescind a transaction until midnight of the third business day following the consummation of the transaction, delivery of the required notice of the right to rescind, or delivery of all 'material disclosures,' whichever occurs last. 15 U.S.C. § 1635; 12 C. F. R. § 226.23. If the required notice or 'material disclosures' are not delivered, the right to rescind is extended until three years after consummation of the transaction." *Malfa*, 825 FSupp. at 1020.

The Chandlers claim that the contract they signed violated the TILA because it failed to disclose the due dates or period of payments scheduled and failed to disclose the date on which the first installment was due and payable. 15 USC § 1638 (a) (6); Reg. Z § 226.18 (g) (1). They maintain that due to this material nondisclosure, their right to rescind was extended to three years from when they signed the contract with MVM. In *Graves v. Tru-Link Fence Co.*, 905 FSupp. 515, 521-522 (N.D. Ill. 1995), under similar facts, the court determined that a construction installment contract's failure to specify an exact date or an estimated date for the start of payments was sufficient to set forth a prima facie case for a TILA violation.

Here, the trial court disregarded the Chandlers' evidence of a possible TILA violation, by refusing to consider the exhibit they offered. It is undisputed that Exhibit A, a copy of the Retail Installment Contract and Security Agreement, which the Chandlers attached to their complaint, fails to disclose any particular starting date for payments. Whereas, Green Tree's Exhibit 2, a copy of the same contract, states, "[p]ayments are due monthly beginning approximately 11/5/91, 30 days from completion date." Thus, the exhibit offered by the Chandlers does not appear to satisfy the TILA disclosure requirement; whereas, the exhibit offered by Green Tree does designate a date.

The trial court held the Chandlers culpable for the disparity between the two exhibits. Relying on *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680) (1986), the trial court construed the inconsistencies between the exhibits against the Chan-

dlers. The court found that at their depositions, the "[p]laintiffs also introduced, identified, and authenticated a contract which contains the approximate date for the first payment [the copy relied upon by the appellees]."

However, during a cursory review of the two exhibits, it is virtually impossible to discern the differences. Only upon close examination, is it detectable that the copy upon which Green Tree relies is materially inconsistent. Although 11/5/91 and the account number 77613499 do not appear on Exhibit A, the contract provided by the Chandlers, Green Tree's Exhibit 2 contains these numbers. In the block "Where Payments Are Due" the date 11/5/91 appears in a type size larger than the rest of the typed words in that space. On line 3 of the Chandlers' exhibit, the date 9-20-91 has a line running through the typed numbers; whereas, on Green Tree's exhibit, the same date is more perfectly typed and is positioned just above the line. When the two exhibits are held up to the light, the signature blocks fail to properly align. Only upon close scrutiny does it become apparent that these two exhibits are not replicas of each other.

According to William Chandler's uncontroverted testimony, he could only read the signatures on the document. At no time during Marie Chandler's deposition was she asked to authenticate the contract or asked about any date or discrepancy. She was only asked to identify her signature.[3] Given the inherent difficulty in detecting the inconsistency in the exhibits and given the discernment problems of the Chandlers, we cannot agree that this evidence must be construed against the Chandlers. In light of the existence of the material factual discrepancies exposed on the face of the two purported copies of the same contract, we believe that a jury must resolve how and why these variances occurred and the authenticity of these two exhibits. See *Sewell v. Akins,* 147 Ga. App. 454, 456 (3) (B) (249 SE2d 274) (1978) (whether the alteration of the document was fraudulent was a fact question for the jury).

We must reject Green Tree's contention that as an assignee, it is liable for a TILA violation "only if the violation . . . is apparent on the face of the disclosure statement." 15 USC § 1641 (a). In light of the apparent conflict in the two exhibits, we cannot determine whether a material nondisclosure occurred.

Furthermore, the installment contract imposes potential liability on Green Tree as follows: "NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECTED TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD

---

[3] She expressed some hesitancy about the signatures on Defendant's Exhibit 2, the completion certificate. On this document, her signature appears as "Marie Chandler" whereas on all the other documents her signature appears as "Mrs. Marie Chandler."

ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HEREOF. . . ." For these reasons, a jury must decide whether Green Tree has liability under the TILA or under the terms of the contract.[4]

3. The Chandlers assert that a jury must resolve their fraud claim. We agree. See *Stiefel v. Schick*, 260 Ga. 638, 639 (1) (398 SE2d 194) (1990); OCGA § 51-6-1. Since fraud is inherently subtle, slight circumstances of fraud may be sufficient to establish a proper case. OCGA § 23-2-57; *McNeil v. Cowart*, 186 Ga. App. 411, 412 (1) (367 SE2d 291) (1988). Although Green Tree argues that the Chandlers failed to show that MVM prevented them from reading the contract or from comparison shopping, we believe that a jury must determine whether the Chandlers failed to use proper diligence.[5] *Elliott v. Marshall*, 179 Ga. 639, 640 (176 SE 770) (1934). Moreover, whether the Chandlers were misled by MVM's alleged misrepresentations and whether their reliance on MVM's statements was justifiable are issues which necessitate jury resolution.[6] *LeBrook, Inc. v. Jefferson*, 210 Ga. App. 650, 652 (4) (437 SE2d 360) (1993). See *Farmers State Bank v. Huguenin*, 220 Ga. App. 657, 661 (2) (469 SE2d 34) (1996); *King v. Towns*, 102 Ga. App. 895, 901 (2) (118 SE2d 121) (1960) (where contract resulted from the exercise of undue influence, plaintiff's entitlement to rescission required jury resolution).

4. In light of the above divisions, we need not reach the Chandlers' remaining enumerations of error.

*Judgment reversed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED APRIL 6, 1998 —
RECONSIDERATION DENIED MAY 1, 1998.

*David G. Crockett, Tait O. Norton, Douglas L. Brooks*, for appellants.

*Kenney & Solomon, Thomas S. Kenney, Charles M. Hall*, for appellees.

---

[4] Green Tree claims that its Notice of Assignment duly notified the Chandlers of the payment date of 11/05/91. However, the record is not clear that they received a copy of this form.

[5] A representative of MVM testified that the total job cost $7,469, not including overhead. The contract price for the job was $15,200 of which $14,000 was to be financed.

[6] Marie Chandler testified that the salesman promised them as senior citizens, a free ceiling fan. The skimpy documentation for the materials billed on this contract does not show whether they received a free fan or were charged for it.