A03A1945. MILLER et al. v. LOMAX et al.
(596 SE2d 232)

ANDREWS, Presiding Judge.

Estelle Lee Miller, Linda J. Miller, and Robert McCready Miller sued Robert R. Lomax as executor of the estate of Thomas Eugene Miller, Carolyn Baldwin Miller, and Ray's Uptown Body Shop, Inc. for fraud and breach of contract. By amendment to their complaint, the Miller plaintiffs added claims against Carolyn Miller and Lomax for interference with contract and against Lomax for breach of fiduciary duty. The trial court granted summary judgment to Lomax, Carolyn Miller, and Ray's. The Miller plaintiffs appeal. For the reasons set forth below, we affirm in part and reverse in part.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law. OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991). A defendant carries this burden by demonstrating the absence of evidence as to one essential element of the plaintiff's case. Should the defendant do so, the plaintiff "cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." Id. Our review is de novo. *Pyle v. City of Cedartown,* 240 Ga. App. 445, 446 (524 SE2d 7) (1999).

Lee Miller and Thomas Miller were married in 1967 and divorced on May 11, 1994. In contemplation of their divorce, Lee Miller and Thomas Miller entered into a Settlement Agreement for the division of the marital property. The Settlement Agreement provided that "[a]s an equitable division of marital property, [Thomas Miller] shall pay to [Lee Miller] the sum of $125,000.00 on March 1, 1994." The Settlement Agreement also required that Thomas Miller execute a will in which he designated his adopted children, Robert Miller and Linda Miller, and his grandson, Robert Jacob Miller, as beneficiaries of not less than a third of his net estate. Further, the Settlement

Agreement required that Thomas Miller "shall not make any conveyance, gift or other disposition of assets in order to substantially reduce his estate and/or to defeat the intent of this [agreement]."

The Settlement Agreement was dated March 1, 1994, and was signed by the parties on March 21, 1994. On March 10, 1994, Thomas Miller paid Lee Miller $100,000 of the $125,000 contemplated by the Settlement Agreement. On March 14, 1994, Thomas Miller transferred $472,000 to Carolyn Miller, then known as M. C. Baldwin, in what Carolyn Miller claims to be a gift.

Ray's Uptown Body Shop, Inc. was incorporated on May 27, 1994, and received $472,000 in cash from stock subscriptions. Carolyn Miller received 158,000 shares for payment of $158,000; Thomas Miller received 157,000 shares for payment of $157,000; and Ray Hendrix received 157,000 shares for payment of $157,000. The shares owned by Thomas Miller and Hendrix were pledged to Carolyn Miller as collateral for loans made to Thomas Miller and Hendrix by Carolyn Miller to fund the purchase of the shares.

Evidence shows that on May 26, 1994, Thomas Miller, in his individual capacity and as promoter for Ray's, purchased land from JNO. A. Pope Motor Company for $472,000. The warranty deed of the land purchased by Thomas Miller, with Ray's as the named grantee, was filed in the superior court on May 27, 1994. Lee Miller and the other plaintiffs contend that the $472,000 purchase of real estate by Thomas Miller and its transfer to Ray's were separate from and additional to the cash Ray's received from the subscriptions, and neither Ray's nor the other defendants have refuted this claim for purposes of summary judgment.

Carolyn Miller married Thomas Miller on July 15, 1994, and they remained married until Thomas Miller's death on January 7, 1998. Consistent with the requirements of the Settlement Agreement, Thomas Miller executed a will bequeathing one-third of his property to his daughter, son, and grandson, in equal shares. Attorney Lomax was named executor under the will. After Thomas Miller's death, Lomax filed a declination of his right to serve as executor. Robert Miller then filed a petition to probate the will in solemn form and for letters of administration. Carolyn Miller filed a caveat to Robert Miller's petition.

On February 26, 1999, Lomax withdrew his prior declination to serve as executor and offered to serve as executor of Thomas Miller's estate. After a hearing, the probate judge appointed Lomax as executor of the estate, and this order was not appealed. On September 10, 1999, Carolyn Miller filed her application for year's support with the probate court with a verified list of personal assets of Thomas Miller showing assets, apart from personal effects, of $2,500 in cash ($78,000 excluding secured debt) and 157,000 shares of stock in Ray's

Uptown Body Shop. Lee Miller and Robert Miller filed the underlying suit on October 1, 1999, in the Superior Court of Muscogee County.

Although Carolyn Miller's application for year's support shows no significant assets apart from the shares in Ray's, according to an October 3, 1995 financial statement, Thomas Miller and Carolyn Miller had joint assets of $1,260,000 and net worth of $1,201,000. It also appears that Thomas Miller sold owned real estate in February 1994 for $800,000, and a portion of these monies was used to fund the March 14, 1994 payment to Carolyn Miller.

1. *Probate judge.* The Miller plaintiffs use a substantial portion of their appellate briefs arguing that because the probate judge had a conflict of interest but failed to recuse herself sua sponte, this "renders all subsequent proceedings nugatory." However, the underlying claims were filed in the superior court, and the Miller plaintiffs do not demonstrate how the actions of the probate judge are relevant to the issues in this appeal.

2. *Lomax, as executor of the estate of Thomas Miller.* The Miller plaintiffs claim the trial court erred in granting summary judgment to Lomax in his capacity as executor of the estate of Thomas Miller. We agree.

(a) In the Settlement Agreement, Thomas Miller agreed that he would not make a conveyance or gift or other disposition of assets which would substantially reduce his assets. At issue is whether Thomas Miller breached that agreement when he gave $472,000 to Carolyn Miller on March 14, 1994. Lomax's contention is that the Settlement Agreement became effective on March 21, 1994, the day of its execution, and prior transactions do not come within its scope. The Miller plaintiffs argue that the Settlement Agreement was effective on March 1, 1994, or March 10, 1994.

It is well settled that, as between the parties to a contract, the effective date of their agreement may precede the date of physical execution. *American Cyanamid Co. v. Ring*, 248 Ga. 673, 675 (286 SE2d 1) (1982). "[C]ontracting parties may agree to give retroactive effect . . . to their contracts as they may see fit." *Goldstein v. Ipswich Hosiery Co.*, 104 Ga. App. 500, 506 (4) (a) (122 SE2d 339) (1961). Although the Settlement Agreement is not specifically stated to be effective "as of" March 1, 1994, the document is dated March 1, 1994, as reflected by the document and by the divorce judgment filed with the superior court; Thomas Miller's obligation to pay Lee Miller $125,000 expressly arose on March 1, 1994; and a substantial portion of that amount was transferred to Lee Miller on March 10, 1994, before the actual date of execution on March 21, 1994. As a consequence, we conclude that the Miller plaintiffs have demonstrated an issue of material fact as to whether Lee Miller and Thomas Miller intended the Settlement Agreement to be in effect before the date of

physical execution. It follows that if Thomas Miller's obligation not to substantially deplete his estate was in effect on March 14, 1994, then the Miller plaintiffs have raised an issue of material fact as to whether the purported gifting of $472,000 to Carolyn Miller by Thomas Miller was a breach of the Settlement Agreement.

(b) We also conclude that Thomas Miller's execution of the Settlement Agreement following the transfer of $472,000 to Carolyn Miller establishes a cause of action for fraud.

> The tort of fraud has five elements. These are: (1) false representation by a defendant; (2) scienter; (3) intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff. For an action for fraud to survive a motion for summary judgment, there must be some evidence from which a jury could find each element of the tort.

(Citation omitted.) *Pyle*, supra at 447 (1). "Since fraud is inherently subtle, slight circumstances of fraud may be sufficient to establish a proper case." (Citations omitted.) *Chandler v. MVM Constr.*, 232 Ga. App. 385, 389 (3) (501 SE2d 533) (1998).

Lomax claims that the facts do not show that a misrepresentation was made by Thomas Miller. Lee Miller and the other plaintiffs respond that they do not rely on any misrepresentation in the negotiation of the Settlement Agreement. Generally, there can be no fraud without an express misrepresentation. See, e.g., *Pyle*, supra at 447. However, the transactions at issue here, including the gift to Carolyn Miller and the subsequent purchase and deeding of property in the name of Ray's, may be challenged as fraud against the Miller plaintiffs' rights as creditors under OCGA § 18-2-21 and the Uniform Fraudulent Transfers Act, OCGA § 18-2-70 to OCGA § 18-2-80.[1]

Under OCGA § 18-2-71 (4), a creditor is defined as a person who has a claim. A "claim" is defined as a right to payment, which may be "unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." OCGA § 18-2-71 (3). Pursuant to OCGA § 18-2-74 (a), a transfer made with actual intent to hinder, delay, or defraud any creditor of the debtor is fraudulent, "whether the creditor's claim arose before or after the

---

[1] In their briefs in the superior court, Lee Miller and the other plaintiffs specifically rely on OCGA §§ 18-2-21 and 18-2-22, but OCGA § 18-2-22, entitled, "Conveyances by debtors deemed fraudulent," was repealed effective July 1, 2002. "[I]t is the general rule that the appellate court shall apply the law as it exists at the time of its judgment, absent impairment of vested rights under the previous law." (Footnote omitted.) *Pine Pointe Housing v. Lowndes County Bd. of Tax Assessors*, 254 Ga. App. 197, 202 (1) (e) (561 SE2d 860) (2002).

transfer was made or the obligation was incurred." We find that Thomas Miller's gift to Carolyn Miller, and his subsequent purchase of land and deeding of the land in Ray's name without documented consideration from Ray's, and his involvement in the capitalization of Ray's with purported funds of Carolyn Miller, could be found by a trier of fact to constitute transfers made with the intent to fraudulently defeat the claims of the Miller plaintiffs under the Settlement Agreement. See, e.g., *Carter v. Bush*, 216 Ga. 429, 430 (2) (116 SE2d 568) (1960) (wife's claim for alimony made her a creditor of her husband even though no judgment for alimony had been rendered when husband conveyed property to his relatives without consideration during pending divorce action); see also *Lewis v. Lewis*, 210 Ga. 330, 334 (2) (80 SE2d 312) (1954) (where deed transferred by husband to his attorney while divorce pending with wife, a jury issue remained as to whether husband executed deed with intention of delaying or defeating wife in collection of support).

We also find that the evidence, when viewed most favorably to the Miller plaintiffs, demonstrates a claim for fraud through suppression of a material fact. OCGA § 23-2-53 provides: "Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Furthermore, "[f]raud may exist as much in intentional concealment of material facts, as in false statements in regard to facts. One is as fraudulent as the other, if it is used as a means of deceiving the opposite party." (Citations and punctuation omitted.) *Tower Financial Svcs. v. Jarrett*, 199 Ga. App. 248, 250 (2) (404 SE2d 622) (1991). See also OCGA § 23-2-56.

Lomax denies the existence of a confidential relationship between Thomas Miller and Lee Miller because the Settlement Agreement was reached at arm's length and through representation by counsel. See *Harish v. Raj*, 222 Ga. App. 248, 250-251 (1) (474 SE2d 624) (1996) (although parties may have owed each other a fiduciary duty in other respects, there was no basis for an inference that confidential relationship existed with respect to the transaction at issue). Even if we accept that there was no confidential relationship that, in and of itself, created an obligation by Thomas Miller to disclose a material fact, such an obligation may have arisen from the particular circumstances of the transaction. OCGA § 23-2-53. See *Tower Financial Svcs.*, supra (real estate closing in violation of sales contract); *Hendrix v. Scarborough*, 131 Ga. App. 342 (206 SE2d 42) (1974) (defendant did not disclose its failure to obtain required additional signatories to guaranty); *Gellis v. B. L. I. Constr. Co.*, 148 Ga. App. 527, 538 (1) (251 SE2d 800) (1978) (defendant concealed its

arrangement to use retained construction loan proceeds to pay interest on loan despite contractual agreement such amounts would be retained until end of construction).

In *Reeves v. Williams & Co.*, 160 Ga. 15, 20-21 (127 SE 293) (1925), our Supreme Court considered when silence by one party could amount to a fraud on the other party to a contract:

> It is true that, as a general rule, one who is contracting with another is under no obligation to make disclosure of his own affairs to any third party, and so much of [OCGA § 23-2-53] as relates to the obligation to communicate arising from confidential relations has no application to the case before us; but it would seem to be a sound rule to place within "the particular circumstances" referred to any case where a person intentionally concealed a fact from a certain other person, hoping thereby to derive a benefit, and knowing that only by silence and by concealing the truth would the anticipated benefit accrue.

In this case, a jury could conclude that Thomas Miller intentionally concealed the substantial depletion of his assets through his gift to Carolyn Miller and he knew that it was only by concealing this material fact that Lee Miller could be induced to execute the Settlement Agreement.

Lomax argues that Lee Miller, through the exercise of due diligence, would have discovered the allegedly fraudulent transfer to Carolyn Miller. See *Middleton v. Troy Young Realty*, 257 Ga. App. 771, 773 (b) (572 SE2d 334) (2002) (plaintiff must exercise due diligence before relying upon the representations or silence of another). An issue as to the concealment of the nature of that transaction is raised by the notation on the check of "Loan Proceeds." In any case, we find that whether Lee Miller exercised appropriate diligence is a question for the jury. See *Wender & Roberts, Inc. v. Wender*, 238 Ga. App. 355, 360 (4) (518 SE2d 154) (1999) (questions of due diligence are generally for the jury to decide).

Lomax also argues that fraud was not pled with particularity as required by OCGA § 9-11-9 (b). If the requirements of OCGA § 9-11-9 (b) were not followed, however, Lomax's initial remedy was a motion for more definite statement. See *Tucker v. Chung Studio of Karate*, 142 Ga. App. 818, 820-821 (3) (237 SE2d 223) (1977).

Lomax next contends that because the Miller plaintiffs have chosen to affirm the contract by suing to enforce it, the "merger" clause in the Settlement Agreement estops the Miller plaintiffs from relying on any prior representations made by Thomas Miller not included in the Settlement Agreement. See *Hightower v. Century 21*

*Farish Realty*, 214 Ga. App. 522, 523-524 (1) (448 SE2d 271) (1994). And relying on *Foster v. Foster*, 260 Ga. 813 (400 SE2d 629) (1991), Lomax claims that modification is the only remedy for alleged fraud in negotiation of the Settlement Agreement. But the Miller plaintiffs do not rely on express misrepresentations in negotiation of the Settlement Agreement, and so *Foster* and *Hightower* are not applicable. In addition, *Foster* may be limited to agreements which include provisions for child support payments. *Butler v. Turner*, 274 Ga. 566, 569 (2) (555 SE2d 427) (2001).

Finally, Lomax contends that the four-year statute of limitation under OCGA § 9-3-31 expired before the commencement of litigation. However, "[a]ctual fraud, through nondisclosure of a known injury or through acts to conceal the injury, which deters or debars the bringing of the action, tolls the running of the statute until discovery of the fraud." (Citations omitted.) *Kane v. Shoup*, 260 Ga. App. 723, 726 (2) (580 SE2d 555) (2003). "When actual fraud is the gravamen of the underlying action, no independent fraud is required for tolling of the statute of limitation, and the limitation period is tolled until the plaintiff discovers or in the exercise of reasonable diligence should have discovered the fraud." (Citations omitted.) *Hahne v. Wylly*, 199 Ga. App. 811, 812 (1) (406 SE2d 94) (1991). As there is evidence that Thomas Miller concealed the true nature of the financial transactions in question, the statute of limitation would not have begun to run until the cause of action should have been discovered. Summary judgment was not proper on the basis of the expiration of the statute of limitation.

In her appellate brief, Carolyn Miller makes two arguments which more appropriately apply to the breach of contract claim against Lomax in his capacity as executor of the estate of Thomas Miller, and we will consider those arguments here. First, Carolyn Miller claims that this case is analogous to *Thorpe v. Thorpe*, 260 Ga. 799 (400 SE2d 620) (1991). *Thorpe*, however, involves a challenge to a will and the proper interpretation of a judgment of the superior court, and we find it inapplicable here. Carolyn Miller also claims that the Settlement Agreement was made for an illegal or immoral purpose and is not enforceable under authority of OCGA § 13-8-1, which provides "[a] contract to do an immoral or illegal thing is void." To support this position, she claims that Lee Miller averred that Lee Miller and Thomas Miller divorced for the purpose of protecting Lee Miller and her children from the creditors of Thomas Miller. But the evidence does not demand a finding that the Settlement Agreement was entered into to defraud creditors. See generally *Bowen v. Bowen*, 182 Ga. 299, 302 (185 SE 312) (1936) (if wife participated with her husband in fraudulent scheme to transfer deeds, she would be estopped from setting transfer aside). For one thing, our review of Lee

Miller's affidavit shows that the averment in question addresses what Thomas Miller told Lee Miller about his motivations for divorcing Lee Miller, and not Lee Miller's intentions in signing the Settlement Agreement, and does not even establish Thomas Miller's true motivations, especially considering the other evidence. Furthermore, under the terms of the Settlement Agreement, Thomas Miller only transferred a small portion of his assets to Lee Miller, theoretically leaving the remainder subject to the claims of his creditors. Accordingly, we reject Carolyn Miller's contention that the illegality of the Settlement Agreement supports the trial court's grant of summary judgment on the Miller plaintiffs' claims for breach of contract.

3. *Ray's Uptown Body Shop.* The Miller plaintiffs claim that the trial court erred in granting summary judgment to Ray's. We agree.

The Miller plaintiffs contend that the capitalization of Ray's and the purchase of the property by Thomas Miller were part of Thomas Miller's scheme to transfer his assets in violation of the Settlement Agreement. Ray's responds that it was not a party to the Settlement Agreement, and that, as a separate legal entity, it is not responsible for the actions of its shareholders. We conclude that Ray's corporate identity does not protect it from liability to the extent Ray's was a recipient of a fraudulent transfer.

A recipient of a transfer intended to defraud creditors may be subject to a claim by the creditor if the recipient did not take the transfer in good faith and for reasonably equivalent value. See OCGA §§ 18-2-77; 18-2-78. Setting aside the question of reasonably equivalent value, a jury could conclude that Ray's did not receive the challenged transfers in good faith inasmuch as its sole director and its chief executive officer at the time of the transfers was Thomas Miller. "To the extent that the jury believes [Thomas Miller], as [CEO] of [Ray's], possessed the requisite fraudulent intent, it would be authorized to conclude that the corporation itself had fraudulent intent. . . . Knowledge of officers of a corporation is knowledge to that corporation and the corporation is bound thereby." (Citation and punctuation omitted.) *Brown v. Cooper,* 237 Ga. App. 348, 354 (4) (514 SE2d 857) (1999).

The Miller plaintiffs also claim that Ray's had an obligation to the Miller plaintiffs under OCGA § 23-2-53 to convey the information about the transfer of funds by Thomas Miller and so is liable for fraud by concealment. We disagree with this theory of recovery because Ray's had no relationship with the Miller plaintiffs, confidential or otherwise, imposing an obligation to disclose. See generally *Bogle v. Bragg,* 248 Ga. App. 632, 636 (1) (548 SE2d 396) (2001) (relationship of plaintiff to defendant showed no disclosure obligation). However, based upon evidence of Ray's involvement in a fraudulent transfer, the trial court erred in granting summary judgment to Ray's.

4. *Carolyn Miller.* Lee Miller and the other appellants contend the trial court erred in granting summary judgment to Carolyn Miller. Again, we agree.

The complaint, as amended, asserted claims against Carolyn Miller for intentional interference with contract and fraud. The elements of intentional interference with contract are:

(1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of a contractual obligation or caused a party or third party to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

(Citation omitted.) *Culpepper v. Thompson,* 254 Ga. App. 569, 571 (c) (562 SE2d 837) (2002).

As discussed above, we have found that there is an issue of material fact as to whether Thomas Miller's transfer of $472,000 to Carolyn Miller on March 14, 1994, and the subsequent transactions involving the capitalization of Ray's, were in breach of Thomas Miller's obligations under the Settlement Agreement. Carolyn Miller was a central part of these transactions. In her brief to this Court, Carolyn Miller contends that she had no knowledge of the Settlement Agreement until years after it was executed and it follows that lack of knowledge would show her actions were without the required malicious intent to interfere with the contract. *Tom's Amusement Co. v. Total Vending Svcs.,* 243 Ga. App. 294, 298 (2) (533 SE2d 413) (2000). However, this assertion is not supported by a reference to the record, and our review of Carolyn Miller's affidavit submitted in support of her motion for summary judgment does not show when she claims to have become aware of the Settlement Agreement. Compare *Unigard Ins. Co. v. Zimmerman's, Inc.,* 151 Ga. App. 394, 396 (2) (259 SE2d 652) (1979) (affidavits showed no knowledge of contract defendants alleged to have interfered with).

We conclude that a trier of fact could infer Carolyn Miller's knowledge of the Settlement Agreement from the surrounding circumstances, inasmuch as she had both opportunity and motivation to find out about the Settlement Agreement, and she participated in complex financial transactions with Thomas Miller, indicating a level of sophistication and involvement with Thomas Miller's finances that makes at least questionable her claim of ignorance as to the existence of the Settlement Agreement. "The jury may infer the existence of

facts reasonably and logically consequent on those proved." (Citation omitted.) *Batson-Cook Co. v. Loden & Co.*, 129 Ga. App. 376, 379 (3) (199 SE2d 591) (1973).

Carolyn Miller further argues that although the parties to the Settlement Agreement may have been free to agree to an earlier effective date, such an agreement is not binding on her as a third party. See *Outdoor Systems v. Wood*, 247 Ga. App. 287, 290 (1) (543 SE2d 414) (2000). The question becomes whether, by accepting the March 14, 1994 gift, Carolyn Miller can be found to have interfered with an agreement which, as to her, came into existence on March 21, 1994. With respect to the March 14, 1994 transfer, we conclude that the Miller plaintiffs cannot establish a claim for interference with contract against Carolyn Miller because there was no enforceable contract in effect at the time. See *Cherokee Falls Investments v. Smith*, 213 Ga. App. 603, 605-606 (2) (445 SE2d 572) (1994) (unenforceable oral promise not sufficient to support action for interference with contract). The Miller plaintiffs contend that they had reached an enforceable oral agreement which had been partially performed on March 14, 1994, but we disagree. The alleged oral agreement is subject to the Statute of Frauds, which the Miller plaintiffs acknowledge, and is unenforceable unless an exception applies. OCGA § 13-5-30. Although there is evidence of partial performance, Thomas Miller could have rescinded his March 10, 1994 payment without it constituting a fraud on Lee Miller, who had yet to perform. "The part performance required to obviate the Statute of Frauds must be substantial and essential to the contract and which results in a benefit to one party and a detriment to the other." (Citations and punctuation omitted.) *Hudson v. Venture Indus.*, 147 Ga. App. 31, 32 (1) (248 SE2d 9) (1978). See OCGA § 13-5-31 (3). Accordingly, there is no evidence of an enforceable agreement in effect on March 14, 1994, with which Carolyn Miller could have interfered. Nevertheless, as Carolyn Miller's participation in the capitalization of Ray's occurred after the execution of the written Settlement Agreement, and a trier of fact could conclude that the transaction was part of Thomas Miller's scheme to violate his obligations under the Settlement Agreement, we conclude that a claim for interference with contract against Carolyn Miller may lie for that transaction.

As to the fraud claims, we find that a trier of fact could conclude that Carolyn Miller was the recipient of a fraudulent transfer made with "actual intent to hinder, delay, or defraud" for purposes of OCGA § 18-2-74 (a) (1). And as a jury could conclude that Carolyn Miller was not a "a person who took in good faith and for a reasonably equivalent value," OCGA § 18-2-78 (a), and because a transfer may be considered fraudulent whether the creditor's claim arose before or after the

transfer occurred, the March 14, 1994 transfer to Carolyn Miller may be subject to the claims of the Miller plaintiffs. See OCGA § 18-2-74 (a) (1).

The Miller plaintiffs also claim Carolyn Miller and Thomas Miller engaged in a fraudulent conspiracy.

A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort. Absent the underlying tort, there can be no liability for civil conspiracy.

(Citations and punctuation omitted.) *Mustaqeem-Graydon v. Sun-Trust Bank*, 258 Ga. App. 200, 207 (6) (573 SE2d 455) (2002). Based on the evidence discussed above, we find that a trier of fact could conclude that Carolyn Miller participated with Thomas Miller in a scheme to effect fraudulent transfers, and so the Miller plaintiffs have shown a question of material fact as to Carolyn Miller's liability for civil conspiracy. "Because civil conspiracy is by its very nature a secret endeavor, concert of action, amounting to a conspiracy, is best suited for jury resolution." (Footnote omitted.) *Traub v. Washington*, 264 Ga. App. 541, 546 (6) (591 SE2d 382) (2003).

5. *Lomax, in his individual capacity.* The Miller plaintiffs assert claims against Lomax, in his individual capacity, for fraud, interference with contract, and breach of fiduciary duty. These allegations can be classified in two general areas; first, Lomax's alleged liability for actions taken as executor of Thomas Miller's estate, and second, Lomax's alleged liability for his participation in transactions undertaken by Thomas Miller during life. We find no factual support for these claims.

The Miller plaintiffs charge Lomax with failing to pursue and collect the assets of Thomas Miller and to distribute the assets as required by the will. The gist of this contention is that Lomax should be acting on behalf of the estate to recover the monies transferred by Thomas Miller to Carolyn Miller in the alleged violation of the Settlement Agreement, as opposed to taking the opposite position in this litigation. However, Lomax, as executor of Thomas Miller's estate, acts in the place of Thomas Miller as far as defending the claims made by the Miller plaintiffs. An "executor stands in the shoes of the decedent, in essence keeping the suit and claims against the decedent alive." *Abrams v. Massell*, 262 Ga. App. 761, 764 (1) (586 SE2d 435) (2003). We find no evidence showing a breach of Lomax's fiduciary duties as executor.

The claims involving Lomax's actions during Thomas Miller's life show that Lomax was involved in the incorporation of Ray's and other business matters relating to that corporation, and may have represented Ray's, Thomas Miller, and Carolyn Miller in those matters. However, Lomax's actions are shown only to be that of an attorney involved in routine corporate transactions and do not show that he conspired to engage in tortious conduct. See, e.g., *Bogle*, supra at 638 (no evidence defendants combined to commit tort). It follows that the trial court did not err in granting summary judgment to Lomax as to the claims in his individual capacity.

In summation, we conclude that the trial court erred in granting summary judgment to Carolyn Miller and Ray's. The trial court also erred in granting summary judgment to Lomax in his capacity as executor, but we affirm the trial court's grant of summary judgment to Lomax in his individual capacity.

*Judgment affirmed in part and reversed in part. Barnes and Adams, JJ., concur.*

DECIDED MARCH 4, 2004.

*McBride & McBride, Bemon G. McBride III, Winburn, Lewis, Barrow & Stolz, Irwin W. Stolz, Jr., James D. Patrick, Jr.,* for appellants.

*Marchetti & Lomax, Robert R. Lomax, Denney, Pease, Allison & Kirk, Ray L. Allison, Richard A. Childs, Jacob Beil,* for appellees.